Thank you, Mr. Chief Judge. Good morning. May it please the Court. My name is Matthew Wright, and along with my co-counsel, Brandon Beck, I represent Mr. Castillo-Rivera today. I'm going to begin by addressing the first issue, the rule of orderliness. This is an issue with far-reaching implications, not just for criminal and immigration cases, but really for every other issue that might come before this Court in any capacity, civil or criminal. And after that, I'll move on to the second issue and briefly explain why Mr. Castillo-Rivera is not an aggravated felon. On the first issue, Your Honors, at its most basic level, this Court's rule of orderliness means that once a panel decides a point of law, that point remains decided. And when that same point comes up again in future litigation, if it hasn't been overruled, we really have nothing else to discuss. But what we're dealing with here is a different situation. The scenario we're dealing with is when an unrelated party identifies a new and truly distinct legal issue that was not raised by the parties to an earlier case and that was not addressed by the Court in its decision. The cases about precedent describe this scenario in multiple ways. They say the new issue was not squarely presented in the first case. It was not fully debated. It passed sub silentio. It merely lurked in the record. All these expressions mean the same thing. If a distinct legal point was not considered and addressed in an earlier case, then that case is not binding precedent on that separate point. In other words, if the issue was not previously decided by the Court, it remains open for resolution by the Court with the benefit of argument and actual consideration. As we've shown in our en banc briefing, this has always been the law in America, and that is a good thing. We do not want important legal questions to be predetermined by accident or default. This Court's decisional law should be based upon its actual decisions. It should not arise by accident or happenstance. Now, in the vast majority of cases, the approach to precedent from the Supreme Court, and then we advocate, is going to be easy to apply. It is a very similar inquiry to what this Court does on a daily basis dealing with preservation. This Court has an intuitive understanding of when a party is raising a refinement to a previous argument and when a party is attempting to raise a new or distinct or different issue. Now, the same thing will be the case under our rule. And let me give you some examples of how the rule will operate. If this Court decides a case about buildings, that doesn't make binding law about vehicles. If the Court decides a case about an enumerated offense under a sentencing provision, that doesn't make binding law about a residual clause. If the Court affirms a very large civil damage award, even a damage award that probably includes emotional distress damages but doesn't discuss the availability of emotional distress damages, that doesn't make binding law on that separate point. And if the Court decides that the absence of a jurisdictional element is not dispositive for purposes of one kind of analysis, that does not make binding law about substantive elements of the same offense. Now, in this litigation, my friend from the government has taken a different position. I'm going to call the government's approach the accidental precedent approach. Under that approach, a panel who addresses only the points raised by the parties might accidentally shut the door on other issues that no one ever identified for the benefit of the Court. Under the government's view, a panel could create binding precedent on an issue without even realizing that it is doing so. That's what I mean when I say it's an accident. In this country, we do not make law by accident. Our understanding of orderliness will not always benefit criminal defendants. In other words, this is not a Federal public defender rule. Sometimes, in this case, it benefits a defendant or an alien in immigration proceedings, but in other cases, the correct approach to precedent benefits the government. One such case is United States v. Rolando Ramirez. We cited it and discussed it on pages 12 and 13 of our Petition for Rehearing. That was a case where the government took the very same position that I am and successfully advanced it. In other words, the position that a separate issue not considered or decided is open for resolution. It won't always benefit plaintiffs. It won't always benefit defendants. It's just the right rule. The one entity that will always benefit from this rule is this Court. This Court will have the authority and the power to truly decide new issues in the first instance with the benefit of argument and consideration. We therefore ask you to hold in a published opinion that a panel decision does not constitute precedent to any discrete legal issue that was not addressed in that opinion. On this second issue, Your Honors, we are asking this Court to halt that the Texas offense of unlawful possession of a firearm is not described in the Federal Statute 18 U.S.C. section 922G. Specifically, we have shown you that the two substantive elements are very different from the elements of the Federal section 922G1. We know from Nieto-Hernandez and from Torres that the absence of a jurisdictional element is irrelevant to the analysis. But that's the only thing we know from those two cases. What we need is an exact match between the substantive elements. And so far as I can tell, prior to Mr. Castillo-Rivera, no party has ever asked this Court to decide that issue. And no court has had the opportunity to address it. When we look at the substantive elements of the Texas offense, we see that they are very different than the Federal Statute 922G. First, Texas defines felon status in a very unusual way. We know that Texas does not require proof that the defendant was convicted of an offense punishable by more than one year in prison. If there's any doubt about that point, I would direct the Court to the cases we've cited on pages 40 through 44 of our en banc briefing. The natural consequence of this observation is that the Texas offense is not described in the Federal Statute. Your Honors, secondly, Texas also applies its definition of firearm in a very unusual, non-generic way. Now, I will agree with my friend that the text of the two definitions looks very similar. And if I were making this argument without a Texas case, that Texas applies it differently, I suspect you would kick me right out of court. But the Supreme Court in Gonzalez v. Duenas-Alvarez says when a party comes along and says that a State offense is different, is non-generic, what the party needs to do is point to a reasonable probability, a realistic, actual case where the State applied its law in a non-generic manner, and we've done that. That case is Boston v. State, where interpreting this very same definition of firearm, Texas prosecutors argued and the State Appellate Court agreed that a compressed air pellet gun was a firearm, because for purposes of Texas law, the explosion was the puff of compressed air. Now, whether the government thinks that position is correct or incorrect as a matter of Texas law, Mr. Boston is in prison for it. It would come as news to him, to prosecutors, and to courts that the U.S. Attorney's Office thinks it was wrong. But really, it doesn't matter what the right answer under Texas law is. It matters what happened in that case. That's the reasonable probability. Before I move on to questions, Your Honor, I want to address two dubious arguments the government has relied on on the merits. Briefly, I suspect I'll have more time to address them in rebuttal. The first is divisibility. The government has argued that the three-part definition of felon status in Texas actually represents three separate offenses, for which a jury must unanimously agree on which theory applies. That's not true. There's no such case that says that. There's no such authority in Texas law. The definitions themselves are overlapping, and as we've shown you, in fact, Texas law is a status. However you acquire the status, whenever you acquire the status, so long as the other requirements are met, you're a felon. The second dubious argument is waiver. The government says we waived the issue of divisibility by not raising it in our initial brief. The government cites this Court's 2009 Ramirez published decision. But that case itself explains why the waiver argument is wrong. Because in Ramirez, the Court says, sure, there's a general issue that if there's a truly new issue, you don't get to raise it in reply. But if the respondent brings up a new issue in its response, you get to reply to it. There's no procedural default. There's joining of the issue. In this case, divisibility is not a separate claim of error. It is the government's response to our argument, which is essentially conceded, that felon status is overbroad under Texas law. And we responded to it in our reply. Your Honor, I have much more to say on both of these points, but I'm eager to get to the Court's questions. So at this point, I would cede any remaining time. Mr. Wright, we're here, of course, to decide the broadly applicable issues that you described. But we have also your particular case to decide. Is there a difficulty with the fact that your client's release date is in early April? In other words, as a practical matter, how is it that we're able, if we should so decide, to give your client effective, meaningful relief? Well, Your Honor, not long ago, this very en banc court met together and rejected the mootness argument based on an immediate release. That was in the case of Gonzalez-Longoria. The en banc court has also decided the case of Heredia-Hulgoon, which also strongly supports the idea that this isn't moot. This particular legal issue, the one about aggravated felony, is also important, because it carries very severe immigration consequences for defendants and aliens, so that essentially you're banned for life as a result of this designation. So this is a very real consequence that's going to carry as a result of this. Well, you're imposing very severe consequences on immigration policy as well when you say that described in means that no Texas felon in possession of a firearm or convicted of that is going to be eligible for immediate deportation anymore. So the downside of your argument is quite consequential for the government as well. On your argument about the rule of orderliness, you started off by saying that law should not be predetermined by accident or default. What's the best evidence of how a court rules on something? The opinion, Your Honor. Yes, sir. And are you creating some sort of presumption that when we write something as in Nieto Hernandez that the Texas felon in possession qualifies under 922G1 that we are ruling by accident or default? No, Your Honor, I'm not. I'm suggesting that there is a presumption when a party waives an issue, this court will not address it. The very same opinion in footnotes is— We can overlook waiver if we so desire, and we tailor our opinions to what we think the law demands. And therefore, I would suggest you are importing a presumption that we are ruling by accident or default if we write broader than, you know, some party later claims we are. Well, Your Honor, of course, at each time, the court is going to have to decide whether there is a truly distinct legal issue that was addressed in the earlier case. It is possible the court could, within its discretion, say, well, the parties have waived it, we have analyzed it, and we have said that the substantive elements are, in fact, the same. That is not, I would submit, what happened in this particular case. Counsel, we're here now to deal with a decision blow, correct? Yes, Your Honor. When the rehearing on Bonk was granted, the panel opinion was vacated. Correct, Your Honor. So your accidental assessment of the law has kind of disappeared, hasn't it? In other words, your client is getting a full hearing by the entire court on this issue. I put that to you because it seems to me that the practical application of precedent is sufficient to manner the whole matter of ordinance. As I've understood the role of ordinance, and I've been around a while, it is simply we apply the rules of precedent. Perhaps we make mistakes in doing so. But if we make a mistake in doing so, there's one qualification to the precedent, stare decisis. Unlike the Supreme Court, we cannot overrule another panel. But we must apply the normative body of jurisprudence which deals with precedent. And if we make a mistake, you can petition for a hearing on Bonk, and that's where you are. And I don't think it's happened since I've been on this Court that we've had this problem. You point to these things and you point to it, and you are cast your argument, I think, tellingly, as somehow or another there's been a great default. The counterproblem of that is that to impose a new set of internal rules which try to fill out what are issues and are not issues, and particularly in a matter of sentencing where it's really highlighted, it's going to create utter chaos. That's the way I see it. Now, I put that to you because I want you to get to tell you straightforward where I'm coming from, and it's one judge, and so you can respond to it. You're getting a full hearing, but you're spending half your time not on some abstract notion of we've come up with that somehow or another this machinery is broken down. And thank you for that opportunity, Judge Higginbotham. I thank the Court for the opportunity to appear on Bonk. I've enjoyed it. It's an honor. I hope I have the chance to come back someday. But I shouldn't have to do this on an issue that was never decided. And so I think that's the difference. You have to do it in every case in which the panel makes a mistake if you want to correct it. Does the panel make a mistake here in your view? Fine. You've got your remedy. Now, you want to create another set of rules, and we're going to be on Bonk to see whether those set of rules were applied. Let me put it to you. There is no other mechanism for enforcing any of the rules you suggest except by hand bonk. Is there? There is, Your Honor. What is that? That is, it's not so much what this panel did as we're talking about what the panel in Nieto-Hernandez did. And what I would submit to you is that the panel wasn't wrong in Nieto-Hernandez. If I win in this case and the exact same issue came before the Court with the same briefing, the same issue, the result in Nieto-Hernandez would be exactly the same as it was before. There was no mistake, because on the argument, the separate issue that the appellant or the Petitioner in that case raised, he was wrong, and this Court was right to reject it. Now, I've got an entire — I've got an entire article in the Fifth Circuit, citing the Rosendo v. Holder, Fifth Circuit's opinion, explaining that Lopez provides a hypothetical approach where a judge looks to conduct prescribed by State law, not just the elements of the State law offense, and compares that conduct to Federal law. Now, I would think you would agree with me that that won't survive Mathis, nor the decisions that preceded it. Is that correct? That's correct, Your Honor. I guess I don't mean to say that every word in the opinion is correct. Obviously, I'm disagreeing with the statement that we say went beyond the actual holding, which is the one that says this is an aggravated felony or it is described in. But you have to address the question of the scope of this opinion, don't you? Because you are suggesting right out that this opinion in no way should have foreclosed the argument, which means that it didn't address it. Your Honor, and it didn't. I treat it. The Court did not address the substantive element issue. There's no hint of any consideration of it. There's no discussion. What does that language mean? The language, I think, is dealing with the issue of the jurisdictional the absence of the jurisdictional element. That's correct. It's dealing with the INS's interpretation, which what the Supreme Court has also told us is controlled by its own decision as well. If I could, I'm sorry, if I could address Judge Higginson's question. I failed to convince you of this argument in a private case. So I want to be sure I get a chance to answer that, and I'll come back to Judge Higginson about that. What I'm curious is very discreet. You gave a Breyer-Gonzalez case site for the proposition about firearm breath. Do you have a case that deals with the theoretical versus realistic that would support the notion that a Texas 4604 conviction can stand on a predicate that wouldn't be a valid predicate for 922G? Your Honor, we've cited the Swierski case, Texas Department of Safety versus Swierski. That's not an unlawful possession of a firearm case, and it's not the statutory definition, but it's the same language we've shown you. This is on the concealed carry license and whether or not you can be precluded from it. Now, in that case, the argument was, well, a federal, you know, drug misdemeanor that is punishable by up to one year, and the court said, well, yes, that's true, but not in a penitentiary, you know, only in a jail, so that doesn't count. That shows you that I'm not making up the way that courts apply this – these definitions. The other thing I would point out is that argument is somewhat different because we're just reading the text and what it has to say. In other words, I'm not suggesting to you there is a non-generic interpretation. Another question, just because your time is running out, is on congressional intent. If we apply the categorical rule, least culpable conduct here, no Texas felon in possession would be an aggravated felon, but every federal felon in possession would be. So this is the windfall problem that the dissent in Mathis is getting increasingly concerned about. But how could that incongruity ever be Congress's intent? Your Honor, in this case, I would suggest it's because of the very unusual way that Texas has defined these – both of these elements. In other words, Congress wasn't thinking about Texas. They were getting at generalities. I mean, that's what Lynch and – Torres-Reed Lynch and Nieto Hernandez suggest. We're talking about something very specific, right? These are unusual ways to define felon. But it will sweep in all federal felon – I mean, Texas felon in possession. Yes, Your Honor. It will sweep in all of those, but that's one state out of 50. Just one quick question. If Texas law is so unusual, it is unusual only in the respect, in my view, that it prescribes felony prosecution for one year as opposed to greater than one year. So it's only one day difference. And yet Congress wrote 920 – was it 920? No, 8 U.S.C. 1101 A43 to include federal and state law. So it's not that different. If I could briefly respond, Judge Jones. First, there's the additional problem of true misdemeanors, not one-year maxims. Now, true misdemeanors that share the elements of Texas felonies, and Texas has a long list of felonies. In that sense, it's a lot broader. I would also say that when Congress chose a specific statute and cited to a specific statute, it's not talking about generic crimes in the general sense, right? They've given you where to go to look. And they said described in. And, Your Honor, based on Torres v. Lynch, we know that that particular language won't be dispositive. And as I think we've shown, every time that phrase is used, whether it's in this statute or in 3559C, the three-strikes law, what we're dealing with is a categorical. There's a federal definition that defines the substantive elements in the abstract, and we're looking for an element-to-element match. All right. Counsel, your time's up. When you come back up on rebuttal, I have a question, but I'm going to ask the question now, and you can answer it when you come back. Putting aside the rule of orderliness, assumed for the possibility the court decides that's a matter we'll discuss and deal with, because, as mentioned to you, the panel opinion is vacated and you're straight up, and taking into account the relief state that your client has, I want a one-sentence response. What is the precise relief you want for your client, given his relief state? I don't want to exegesis about rule of orderliness, about the statute itself, but I want to know what is the narrow relief that you want and can get on your client's situation, given where he is. You got me? Actually, Your Honor, thank you very much. All right. I'm going to be waiting. All right. Next up, the government. Mr. Portugal, am I correct? You've likewise taken your first half. Is that right? I have, Your Honor. I do not anticipate using all of it. All right. Go for it. May it please the Court, Mr. Chief Judge, Brian Portugal for the United States. I'd like to begin with Chief Judge Stewart's question, as he left off with my friend at the bar. There are two discrete legal issues before the Court in this case, to be sure, but what is unique about the first issue is that beyond deciding the relief that Mr. Castillo-Rivera will or will not receive in this case, the rule he seeks implicates how this Court will go on functioning as a Court that sits in panels. I suggest that the relief he seeks does not require that this Court re-evaluate its rule of orderliness. With that statement, Your Honors, I would like to waive the privileged time and open myself up to the Court's questions. How does it possibly make sense or how is it fair to take the narrow situation in which an attorney or maybe even a pro se litigant in a prior case, civil or criminal, has explicitly waived an issue and the prior panel acknowledged that that issue was waived and declined to address it? How does that possibly promote the interest of justice that the litigant in the subsequent panel is foreclosed from raising that issue because it's deemed to have been decided under the rule of orderliness? It's fair first and foremost, Judge Smith, because the Court is not bound to accept the concession of a party. Furthermore, as was discussed in Judge Jones' questioning to my friend, when a panel decides to write an opinion and fashions a holding, I think that we should take the panel at its word that it has viewed the law, it has viewed the circumstances before it, and it has decided that going forward there needs to be a precedent so that litigants, future panels, and district courts alike have some basis to adjust their conduct and have some basis. If you would use your opera voice a bit, your theoretical voice, and boom it up just a little bit. Excuse me. I'm sorry, Your Honor. I'm hoarse from the cold. No, excuse me. Just ratchet it up a little bit so I can hear you good. Yes, Your Honor. What I hear you saying is that we should be inviting or encouraging our panels to overwrite, that is to say, rather than deciding the discrete issue before us in the thousands of cases that we decide, that we should go ahead and engage in decisions on issues that the parties concede, and if they've conceded it, presumably they haven't even briefed it. I mean, we tend to be more modest than that, that is to say, to encourage our panels only to decide the issues that are properly raised and which issue is properly joined. It seems to me that you're recklessly encouraging our panels to overwrite and to examine every possible issue that might have been raised. In an adversarial system, that's not the way it's done. I don't think that it's inviting panels, Your Honor, to overwrite. I think what it is doing is it allows a panel that sees a legal issue to settle the legal issue, even when perhaps one argument was not made. Even when the parties haven't briefed it because they said one party perhaps foolishly has conceded. That just doesn't promote the interest of justice because it's so easy to see where an issue has been conceded and we can decide under a more constrained rule of orderliness that that issue is still open because it hasn't been conceded. There's no uncertainty about that. But I think, Your Honor, that gets to the distinction that I try to draw in the brief between issues and arguments. When an issue is presented, there may be one or more arguments that a panel considers in a case that is briefed. There may be other arguments that are not presented. But, again, for the panel going forward to go through the discretionary factors in considering whether to publish and how broadly to fashion a holding. But, counsel, what you're arguing are just truisms. No question that that can happen. No question, but I'll put it to you that the normal rules of stare decisis will take care of that if we adhere to them, and sometimes we fail to do that. No question whether the issues are not decided in these matters when it's that clear, but then the question really that's being argued here is why isn't the en banc procedure sufficient to make those corrections so that there's no injustice done? I think that that's absolutely correct, Judge Higginbotham, and the idea of the unfairness to litigants, I think, is minimized by the fact that there is a procedure to correct what the en banc court might view as an error that needs to be corrected. Government is just... There is a counterpoint that, well, that would put some individual litigants to the task of going en banc, but that presupposes that this is a prevalent practice and that there really are judges who have incentives to make these mistakes, et cetera, to overwrite. Now, that hasn't been my experience, and I don't think that is... I don't see that we've identified a whole series of cases where this has presented a problem. We're here. And why are we here? Because a majority of judges thought the panel is wrong. And what's before us? The validity of the case or controversy that's before us. The rules of why isn't the government satisfied with the ordinary rules of stare decisis, subject to the fact that a panel can't, unlike the Supreme Court, reverse itself, reverse another panel. Why aren't those adequate? Is that a question? I'm sorry. I didn't get the last part of what you said, Judge Higginbotham. Yes, the question is why isn't the normal principles and body of jurisprudence of stare decisis adequate to run this Court in terms of panel orderliness, if you will? I think they are adequate, Judge Higginbotham, and I think this Court's case law has shown how they are adequate. One panel may not overrule another panel, absent a change in the law. Now, that doesn't take away from the fact that the Court, in reading a precedent, or reading an opinion, always has to determine what the holding of the prior case is. I have a question about that. I thought this was a categorical approach case, other than the jurisdictional issue about interstate commerce. Is that correct or not? That is correct, Judge Higginbotham. So categorical means categorical. Whether arguments are raised, particular hypotheticals are raised or not is irrelevant. It's either categorically a match or not. So why are we even talking about it in these kinds of cases? It seems to me we've got a rule of orderliness issue. It should never be in a categorical case. I think that's correct, Your Honor, and that's why the panel in this case applied Nianto-Hernandez and said that it foreclosed the appellant's argument. I mean, I can see how you might make that argument in some other case, but I do not understand why it's an issue in a categorical analysis. I'm sorry. Why it's— It's not his position. Go ahead. As a novel approach, I'd like to ask you a question about the merits of the case, since I should control this whole procedure. Opposing counsel has said that the Boston case held that the air gun was a firearm. That wasn't the legal holding in the case, was it? I believe that the legal holding of the case—I don't think so, Judge Clement. I think the legal holding of the case was that there was sufficient evidence of that element because of the testimony of the expert firearms examiner. But not the actual holding. Correct. Has Texas ever held or applied the definition of firearm more broadly than the federal definition, or is it just implied that it could do so? I'm not aware of a Texas case that applies that definition as broadly as my friend at the bar suggests. In fact, in the en banc brief that we filed, I didn't want to overburden the court with citations, but there's a concurring opinion citation from a court of criminal appeals decision, and it's representative of a lot of discussion in Texas case law, which is where the BB gun comes up. It's often stated that it is a deadly weapon, but the court will say in passing that it's obviously not a firearm because it doesn't have the element of an explosion propelling a projectile from the barrel. So the position that Boston is controlling is not consistent with the Supreme Court's requirement in Gonzales that an actual case be relied upon. Is that correct? I would agree with that, Judge Clement. Go ahead. I'm sorry. I've already asked a question. Okay. Judge Graves, and then back to Judge Smith. Go ahead. Are you saying that in Boston there wasn't a determination that that air gun was a firearm? There was a determination that in that case the evidence was sufficient to prove that element, but I don't think that the issue, if you will, of whether a firearm or whether a BB gun absolutely qualifies as a firearm was decided. The evidence was sufficient to determine that element. Correct. It's really disappointing to me that the Department of Justice is taking such an extreme view of the rule of order limits because I thought that the Department of Justice took the position that its task is to do justice rather than to win every case. But in practical terms, the rule that you suggest, particularly on this sub-issue of when issues are decided, will always favor the government. And the answer that you can go in bank is a frivolous one because out of 6,000 or 7,000 cases that we decide on the merits every year, we might go in bank on only four or five of them. So telling an individual litigant that he or she can just apply for in bank doesn't raise much hope. I've been on this Court 29 years, and I have never seen the government join in urging in bank review of a case in which the government has won before the panel. It will always be in the interest of the government if it wishes only to win the case rather than to do justice. It shuts the litigant off from raising an issue on a point of law that's never been decided because the government can smugly oppose in bank and assume that that case will not be one of the three or four or five that we will consider, that the whole Court will agree to consider. Well, two responses to that, Judge Smith. First, the rule cuts against the government just in the same way that it cuts against a defendant appellant. The case we've cited in our briefing, Endoza-Blanco, where the Court noted that it believed the standard of review to be wrong, well, that was a more onerous standard against the government. And that is emblematic of the rule that a prior opinion may have gotten something wrong, but it's settled. And that's consistent, and this is my second point, that's consistent with the presidential system anyway. One panel may, or more than one panel, maybe multiple judges of the Court might believe that a prior panel precedent is wrong, but the interest of the law and stability is often greater than the interest of having a legal issue settled one way or the other based on reasonable minds that could disagree. So in every presidential system, you will have case law where some judges, some litigants believe is wrong, but it is nevertheless settled and everyone knows what the rule is. Counsel, let me ask you about how the panel decided this case, both the concurring opinion and the majority. It seems to me somewhat consistently, maybe completely, with what Judge Smith is saying, that it's a fairly reasonable interpretation of story decisis, why we have to call it the rule of orderliness, I don't know, but anyway, our rules on how to examine precedent, that if a panel says an issue was waived, an issue was inadequately briefed, an issue was conceded, then whatever holding there is in that case has that limitation, that if in the future that issue is not waived or conceded or whatever else that caused the panel not to address it, it's still alive. And that's much different, I think, than some of the arguments in this case. Mr. Wright's been limited in what he's argued up here, but to go far beyond that and look at what the briefing was and decide when an issue was raised but not addressed at all, but just looking at the opinion as the definition of how story decisis is going to work in this case, the first opinion, anything that's not addressed because it expressly is identified as being conceded or otherwise not on the table, it seems to me that's still alive. Why isn't that a reasonable interpretation? Of course, I don't want you to have to say, Your Honor, you're being unreasonable. Tell me what's wrong with that approach to story decisis. Well, the approach that this court has followed and that I think the panel followed here is taking a prior panel of judges, taking them at their word. The panel of this court knows how to write a limited holding and reserve consideration of arguments. So you're saying in this case opinion either a majority should have said because of footnote 6 in Nito Hernandez or Nito Hernandez should have said because of our footnote 6, we resolve this with that qualification. That's what they need to say as opposed to it just being we're not reaching that question? That's what they held, we're not reaching that. I may be over-reading, not overriding, but they did say we did not address that issue. Judge Southwick, are you talking about the panel opinion in this case? I did try to correct myself. I'm talking about the footnote in Nito Hernandez and what the panel at the end of the opinion says about we therefore hold that this is an aggravated felony. I don't think that the panel in Nito Hernandez said that this offense is categorically described in 922G1. Well, I agree with Judge Olin that that may make an exception or take this off the table. We'll have to address that. But just generally, if you're not talking about something that the categorical approach goes to, why isn't that a reasonable interpretation of story decisiveness that anything not – that is expressly not considered in the opinion, the opinion says that, is therefore still an open issue? Because I think that would cabin a panel's ability to give future guidance to litigants and courts about, for example, in this case going forward, whether something – whether an offense categorically is or does or does not fit within a statute. The answer to why your Honor's formulation differs is that panels of the court need to have the ability and the authority to give guidance. And notwithstanding the fact that a litigant conceded an issue, the court does not have to accept that concession, can look beyond the concession and satisfy itself that the rule it's announcing is based in the law. I think that is exactly what happened here with Nito Hernandez. We refer in our brief to the statutory amendment. I don't think there's any question, Your Honor, but that at the time Nito Hernandez decided the case, the felony definition and the firearm definition were clearly categorically the same. And the panel was simply giving guidance to future litigants, future panels, and district courts on what the rule will be going forward. So if a panel were to address an issue that it acknowledged had been waived, that issue would be moot. There would be no case or controversy, and anything the panel might say about that would be the very purest sort of dictum. With respect to an issue that wasn't raised, but not with respect to an argument about an issue, the issue in Nito Hernandez was, is this offense categorically described in 922G1? The court answered that question. May I interject and ask another question about the merits? That's all right. I assume the government defends Nito Hernandez on the merits today, or does it not? Do you waive that or not? No. All right. Well, let me ask you my question, and then I think I would like to hear what you have to say. But my question is this, coming from Torres v. Lynch, and we use a categorical approach, but that has been used, as far as I recall to date, in cases where we were categorically talking about generic offenses. In 110143A, whatever it is early on, it says murder, rape, sexual abuse of a minor. And that's when you refer to the generic definition of those offenses. Justice Kagan said a little bit about that in Torres v. Lynch. I draw your further attention, well, she said the defendant is making some argument about why didn't Congress specify the interstate commerce business wasn't necessary in cases of state offenses. And she said, Section 1101A43 includes many other statutory references that do not convert easily to generic labels. Example, listing federal statutes defining various firearms offenses. To be sure, Congress used such labels to describe some crimes qualifying as aggravated felonies. For example, murder, rape, or sexual abuse. But what is good for some crimes is not good for others. The use of a federal statutory reference shows only that Congress thought it the best way to identify certain substantive crimes. Now, the language of 110143A variously describes these incorporated crimes as generic, or defined in, or relating to, or described in. And this 922G1 has both described in and relating to. And to get to my question, don't we have to use the categorical approach with sensitivity to the fact that described in is not the same as defined in, and relating to is not the same as defined in? I agree with that statement. I understand the argument, and I understand the language in Torres. The government advocated strongly in Torres that the defined in, described in distinction made a big difference. The court in Torres seemed to reject the government's argument that described in settled the issue. It nevertheless went on to expound, as Judge Jones has read. I think that is a good way to distinguish the approach. But having been told by the Supreme Court that that was not the full answer, I don't know that the government can advocate for a distinction on that basis, particularly because in a case called Moncrief v. Holder, which I believe is just a few years ago, it might have been 2010, the Supreme Court said that quite broadly, I believe, and actually I think it was a described in offense that was at issue in Moncrief, the court did say that you approach these categorically. Well, I know that. But I'm still, the court is also attempting to be very textual in Torres. I agree, Judge Jones, and I think that's a principled basis to distinguish it, and I think the language you cited is also consistent with what they also said last term in Voisin, which is Congress intended to capture these state offenses broadly. So in that respect, I agree analytically with your point, Judge Jones. Can I just ask the direction of your arguments to us? Are you, does your argument in the brief, you suggested we should revisit an overrule Hinkle. Are you pressing that argument? Yes, Your Honor. Next question I have is, is the government. Would you speak in? Yeah. Is the government pressing a mootness argument? And if so, what's your best case for that proposition? The government is not pressing a mootness argument. I believe that argument would not be successful in light of what the court decided within the last year or so. Okay. So just to go back to your substantive point and your position that Hinkle's wrongly decided, you've heard from my questions before. I see an incongruity problem here that makes me doubt this was Congress's intent, and it is a huge windfall. But in my reading of the case, all that just puts me in the Mathis dissenter's viewpoint. So here's my question to you. Isn't the hard question to you that Justice Kennedy may be right in Mathis, saying that Congress can rewrite 1101. They can use involves in if they want to get at circumstances. But until they do that, we're stuck with this very difficult and crumbling edifice that the categorical rule puts on us. I don't think we're stuck with Justice Kennedy's concurrence, Judge Higginson. I think that the Mathis majority opinion gives you a principled way to affirm in this case because Mathis says you must look to state law to determine the elements versus means distinction. And our point with respect to that distinction is that under Texas law, when a single manner and means is alleged in the indictment, now that becomes the element. This is your merger into unanimity. It gets around Thomas's concern. Is there any circuit case? And quite a few cases, district court included, have interpreted Mathis already. And quite a few law reviews. As I looked, I don't see any case district level or scholarship yet embracing that merger theory. So is that novel, your presentation to us? I think it's novel only in that Texas law has peculiarities to it and that Mathis tells us to look to state law. It is a novel argument in the sense that I don't think, as you mentioned, Your Honor, any scholarly treatment or court treatment of the issue. If we don't accept your argument that whenever the Boston case is discussing sufficiency, it's not discussing firearm, in order to distinguish Boston, do you have to say it's not precedential and therefore we just put it to one side? Or what do we do with that case if we were to decide your way? Yes, Judge Elrod. I think you do put it aside. Is there authority for that, that not precedential cases, but cases which nonetheless have people going to jail, cannot be considered in terms of deciding this question of whether Texas actually does this or not? I think it's just the general proposition that the court of last resort for the state is the authoritative source of Texas law and looking to post that fifth district case, looking to Texas court of criminal appeals case law, you don't find any treatment of a BB gun as a firearm. You find it treated as a deadly weapon, which is a different definition, but not a firearm. And the distinction comes into play because for certain kind of aggravating circumstance, you can have a firearm or a deadly weapon. And what you find again and again in Texas law subsequent to that case and discussed in court of criminal appeals cases are BB guns being treated as deadly weapons, but not firearms. And are we distinguishing pellet guns in any way? I don't think so, Your Honor. And I think that was in the concurring opinion case that I cite. I apologize. The name escapes me at the moment. But it's in that portion of the brief. The Mosby or something like that? Not Mosby. Actually, it was another one subsequent to that, Your Honor, where I believe the concurring judge, and again, this is kind of representative in my view of Texas case law, discusses that a BB gun or a pellet gun doesn't get you there because there's no explosion. And there's no difference between the BB gun or the pellet gun? Well, there is a difference, but not for purposes of— But I understand practically there is a difference. Right. Mechanically there's a difference, but you're saying under the law there's not a difference? Correct. Can you succinctly walk us through how you win on the merits? I just still don't know what your theory is of how you win on the merits, even though I've read everything. Yes, Your Honor. First, the court can apply divisibility in this case because the defendant's argument against divisibility is waived. The court can also decline to apply Mathis in that vein because divisibility is waived. The court can also determine that the felony element in this case is not overbroad because when the State charged Mr. Castillo-Rivera with unlawful possession of a firearm, the predicate they charged was unlawful use of a motor vehicle. That predicate offense is punishable by more than one year. When the State chose to charge that particular predicate, it became the element for purposes of his case, and therefore, looking to an element, the element is not overbroad. Can I ask you back to Boston? Boston is a substantive case as assault on a peace officer. It doesn't involve the question of whether Texas would prosecute somebody under 4604 for a predicate offense involving something other than a traditional firearm. So is that even a case we can look to on this less-than-theoretical possibility that the State would actually use that? Because don't we have to look at a 4604 case, or can we just look at any case? I think that's a very good distinction, Judge Haynes. Not only is this unpublished and unprecedented, and from an intermediate court of appeals, it's also not a 4604 case. And then I wanted to ask you, on the issue of 4604F3 is publishable by confinement for one year or more in a penitentiary, is that referencing a minimum sentence or a maximum sentence? I think that's the minimum. Right. So if we have a bunch of misdemeanors that are punishable up to a year, that would not be encompassed in F3. It might fit some other definition, but it wouldn't be under F3. Right. Okay. For Texas law. Texas law. Not for a foreign conviction. Right. Okay. Sum up. Parting words. Before the red light catches you. Members of the Court, I would just circle back to where I began in my argument. The merits are what they are. I think that we presented a strong case that Mr. Castillo-Rivera loses on the merits. But wholly apart from the merits, this Court's precedents on the rule of orderliness have been principally applied. They've provided stability not only to other panels, district courts, but litigants and agents of litigants in trying to conform their conduct to the law. For all the reasons expressed in our brief and in oral argument today, I would ask the Court to affirm the district court's judgment and decline the invitation to modify the Court's rule of orderliness. All right. Thank you. Thank you, sir. All right. Mr. Wright, back up to you. You've got a one-sentence narrative response to my question. At a minimum, Your Honor, we're asking to modify the judgment and to hold that he is not an aggravated felon. In the event that the decision comes out before he is deported, we would ask that he be resentenced. But at a minimum, we ask that the judgment be modified in district court or ordered modified and that this Court so hold. Based on what? Based on the view that it is not an aggravated felony. The judgment currently says 1326B2. In other words, he was convicted under the statute that presumes an aggravated felony. And this Court has recently reaffirmed the idea that then this crime also becomes an aggravated felony and maybe even he can't go back and challenge it later. So at a minimum. So you're saying the B2 designation has collateral consequences regardless of whether he actually gets relief on his sentence? Yes, that is this Court's precedent and that is the case. Mr. Wright, could you give us your take on the Boston opinion? Your Honor, if the Court did not hold that that pellet gun was a firearm under Texas law, this will be welcome news to Mr. Boston in prison right now. And we'll have to write him a letter and say you should file a habeas petition because that's why he's in prison. If they don't prove that that compressed air pellet gun is a firearm for purposes of Texas law, he walks. He's acquitted. But what do you do with Judge Haynes' question that it's really not an analogous, that we don't look to that situation to decide? Your Honor, it's not a 4604 case, and I agree with Judge Haynes on that, but it is a 4601 case. The Court is applying the same statutory definition. And I think that the Court would be imposing too restrictive a burden under Gonzales v. Duane Azalvarez when you say not only is this a case like we found out from the newspaper this happened, this is an appellate case. We know exactly what happened, and it's interpreting exactly the same statute, but maybe it would be different applying the exact same statute in a different context. But it's not exactly the same because the question is whether Texas is really going to prosecute under 4604 in some of these theoretical ways that have been imagined. And we don't have an answer to that in Boston or anywhere else that I've seen. And, Your Honor, our position would be that Boston establishes at least a reasonable probability for purposes of Duane Azalvarez. Boston was an aggravated assault case, not a felon in possession. It was an aggravated assault case, right? I agree with that, Your Honor. It was. It wasn't a felon in possession case. It was an aggravated assault, but they were applying the definition of firearm in Chapter 46, this same definition of firearm. In your opening remarks, you drew a distinction between refinements to arguments previously made, which I take it you say won't allow you to get around a prior opinion, versus new arguments. And that's obviously a fuzzy line. I'm trying to get a handle on the implications of your argument and where you would draw the line. So with respect to Nieto-Hernandez in this case, the way you try to frame it is, well, that was just a jurisdictional challenge. There was no challenge to the substantive elements. Suppose in Nieto-Hernandez the defendant had challenged not just the interstate commerce aspect, which you call the jurisdictional challenge, but it also raised a challenge to one of the substantive elements, say this firearm issue you're raising. And the court rejected that, affirmed the sentence, and now you wanted to argue another substantive element, the felon definition. How would that play out? Would that be barred because there was a challenge to the match of the substantive elements? Your Honor, I think if it's a truly distinct legal issue. In other words, if we can say Nieto-Hernandez was correct, but nonetheless a different result in this case, then it's a distinct legal issue. Now, certainly in that circumstance, Nieto-Hernandez would be very persuasive authority. I would have a very difficult time winning in that situation. But the court wouldn't truly be bound. But again, I agree there are going to be closer cases. Well, let me ask one follow-up on this whole precedent issue. And I think this might be similar to what Judge Owen asked, the other side. Assume as a general matter you're right that arguments that the opinion acknowledges were expressly conceded or waived like footnote six here says, that those aren't binding. Those issues are still live and can be considered by a subsequent panel. Assume that's true as a general matter, and I think most people would agree. Say you've got a civil trial, and the defendant loses at trial, comes on appeal, and just challenges the damages award. I think most people would agree that wouldn't be a precedent on whether there was actually liability in that case because the defendant wasn't challenging it. But I think what's trickier here, in statutory interpretation, the normal rules of preservation and waiver really don't apply or at least apply with as much force because, and it makes sense and the Supreme Court has said this, you're not bound in a statutory interpretation case to what the parties argue. If one party says the statute means X, the other party says it's Y, a court's obligated to still say the statute means Z because the job is to determine the legislative intent. And this isn't quite statutory interpretation because, as Judge Owen said though, it's a categorical match. The court is basically looking at interpreting whether the state statute matches this definition. So how do you grapple with the fact that in cases where a court's interpreting the statute and its duty is to be faithful to legislative intent, it really isn't bound as it usually is by the force of the party's arguments? I'd like to respond in general and in this case, if that's okay. In general, I think this is no more difficult than other questions about precedent. Is the case distinguishable? Has it been unequivocally overruled? Has there been a change in law that changes the outcome? Sometimes these questions are hard. Usually they're not. In this specific case, I want to show you that even if there are closer cases, this isn't one. In addition to the waiver, there's also been some back and forth in the briefing about this change in Texas law. Texas changed its definition of felony after my client was convicted of the offense, but before this Court released its opinion in Nieto-Hernandez. So was Nieto-Hernandez, which version of the substantive elements were they looking at? You know, and the government says, well, maybe we could have made that argument. No, you can't say which version of the substantive elements the Court was looking at because they weren't looking at the substantive elements at all. In a situation like this, I would submit there's no question, notwithstanding the general language, right, which does say, I agree, it says it's an aggravated felony under this statute. That can't be read apart from the concession or from the arguments raised by the parties. A hypothetical we bandied about. Imagine this Court holds that Mississippi burglary of a vehicle is not a generic burglary. This could happen. I mean, I don't think there's any such case, but it's not a generic burglary, so it's not an aggravated felony under subsection G of this definition. And then the Board of Immigration Appeals comes along and says, okay, it's not burglary, but it is theft. It's a theft offense, and so it's an aggravated felony under that same subsection. I don't know enough about Mississippi law or the precedent interpreting provisions to know what's right on the merits, but what I know is an opinion that is about whether or not something is burglary does not resolve the question of whether it's not theft. And that is true even if, in writing the opinion, the Court doesn't drop a footnote or an explanation or a reservation. Now, we're not considering these 19 other separate issues that our clerks have identified that the parties didn't raise. That's just not the way it works. The Court resolves the cases in the way that it comes to the Court, and that's what we should expect. Let me ask you a question about that because the public defender ought to be advocating not simply for each client. We're not talking about immigration per se here. We're talking about a criminal conviction. So you ought to be advocating at least some amount of consistency, consistent with the whole purpose of the sentencing guidelines, which is to achieve consistency. And what you are arguing for is a principle that allows the public defender to come up in every subsequent case that has these embedded statutes, which, as you know, are many of the cases, and argue, well, you touched on that issue, but you didn't touch on that issue, and thereby seek differentiation in every single case to the ultimate detriment, whereas our goal is to achieve consistency. Your Honor, I think consistency cannot come at the cost of correctness. Now, in the situation where the Court has decided an issue— Correctness is handled by the en banc court. And thank you for that, Judge Jones. I know this is a big concern of Judge Higginbotham, and I think I can get at why en banc is not right when the issue wasn't actually decided. Now, we agree. If it was actually decided, yes, en banc is the way to go. But if you look at the criteria specified in Rule 35, this is not simply an error correction procedure. Right? The idea is that it's limited. I would be happy if for the rest of my career as a public defender you had me here twice a year. Right? I would like to do that. But I don't think that's what the Court wants. Where an issue wasn't decided, there's no need to bring everybody together and consider it anew. I mean, we're dealing with some very granular issues in this case. Could I ask you one question? Yes, Judge Higginbotham. Before you close, please. As I understand your argument, at bottom you maintain that the panel in the case we took en banc was not faithful to principles of stare decisis. Correct? Correct, Your Honor. Thank you. I will say that the Herald opinion has also been vacated as a result of a GVR, but the panel was applying another rule. So we think both of these themes and threads are evident in this Court's precedent. We think at a minimum we need an en banc opinion to resolve it. I would point out that in Mosley, I see my time has expired. I won't do that, Your Honor. Thank you. All right. Thank you to counsel for both sides. This concludes the argument in this case. Thank you. Thank you. Thank you. Thank you.